The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUZANNE MACDONALD,

    Plaintiff,

v.

GRACE CHURCH SEATTLE, THE PACIFIC NORTHWEST PRESBYTERY OF THE PRESBYTERIAN CHURCH IN AMERICA, and THE PRESBYTERIAN CHURCH IN AMERICA,

    Defendants.

CASE NO. C05-0747C

ORDER

I. INTRODUCTION

This matter has come before the Court on Defendants Pacific Northwest Presbytery ("PNWP") and Presbyterian Church in America's ("PCA") motion for partial summary judgment dismissing Plaintiff's negligent supervision and wrongful discharge in violation of public policy claims against them. Having carefully considered the papers filed by the parties in support of and in opposition to the motion, the Court has determined that no oral argument shall be necessary. For the reasons that follow, the Court hereby GRANTS the motion.

ORDER – 1

II.   BACKGROUND

Plaintiff Suzanne MacDonald worked at Grace Church as an office administrator (her title later changed to "church executive"). She began working for Grace Church in March of 2001, at the request of its then-pastor Tom Allen ("Allen"). At that time, Grace Church was still a "plant" or "mission" church, rather than a "particular" church. As a "plant" or "mission" church, it was administered and supported by the Mission to North America, a "division" of the PCA responsible for, among other things, extending the PCA's presence in North America. On September 16, 2001, Grace Church became a particular church. (Rayburn Decl. ¶ 12.) In contrast to "plant" churches, "particular" churches govern themselves.[1]

Plaintiff's job responsibilities included assisting in church organization, providing administrative support for Allen and an associate pastor, David Sellers, managing the office assistant and the music director, and handling church correspondence. (Resp. 5.) Beginning in October 2001, Allen began to make romantic advances to Plaintiff. These advances increased in intensity and persistence, ultimately culminating in the termination of both Allen and Plaintiff's employment.

Defendants PNWP and PCA have now moved for partial summary judgment dismissing Plaintiff's claims against them for wrongful discharge in violation of public policy and negligent supervision.

III.   ANALYSIS

   A.   *Applicable standard of review*

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions and provides in relevant part that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether an issue of fact exists, the court must view all evidence in the

---

[1] *See* D10199 (ch. 4 of the Book of Church Order ("BOC")) (explaining that a particular church's officers are its teaching and ruling elders and its deacons and that its jurisdiction is lodged in the church Session, which consists of its pastor(s), associate pastor(s) and its ruling elders).

ORDER – 2

light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. *Anderson*, 477 U.S. at 248. The moving party bears the burden of showing that there is no evidence which supports an element essential to the non-movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In order to defeat a motion for summary judgment, the non-moving party must make more than conclusory allegations, speculations or argumentative assertions that material facts are in dispute. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

   B.   *Wrongful discharge in violation of public policy*

Plaintiff's claim for wrongful discharge is grounded in Washington law. (*See* Compl. ¶ 10.2 (stating that "[t]he State of Washington has a clear, well-defined public policy against sex discrimination and retaliation as set forth many statutes [*sic*]").) However, Washington courts do not impose liability for wrongful discharge on parties not properly considered employers of the complaining party. *See, e.g.*, *Awana v. Port of Seattle*, 89 P.3d 291 (Wash. Ct. App. 2004) (declining to impose liability for wrongful discharge on Port, who was neither a direct nor a de facto employer).[2] Here, neither Defendant PNWP nor Defendant PCA was Plaintiff's employer. (*See* Resp. 15–22 (not arguing that Defendants PNWP and PCA are subject to potential liability because they employed Plaintiff, but only by virtue of their relationship to Defendant Grace Church).) Although Plaintiff may have performed some duties incidentally benefiting the PNWP and the PCA in the course of performing her duty to provide administrative support to Pastor Allen,

---

[2] Plaintiff argues that the *Awana* Court declined to impose liability on the Port on grounds irrelevant to the present case (*see* Resp. 16 n.16). However, the *Awana* Court framed its discussion by stating that the plaintiffs' contention was that a direct employment relationship should not be required for liability. The court then proceeded to explain why the plaintiffs had failed to show why a direct employment relationship should not be required, specifically noting that none of the authorities cited by the plaintiffs showed that the employee-employer relationship could be dispensed with altogether. 89 P.3d at 293. Therefore, although *Awana* involved a different public policy, its holdings with respect to the necessity of the employee-employer relationship are applicable to the present case.

ORDER - 3

this activity does not create an employer-employee relationship between Plaintiff and either of these two entities.

Although Plaintiff argues that there are strong policy grounds for extending liability for this tort to non-direct employers, none of Plaintiff's cited authorities supports this proposition. Plaintiff particularly relies on *Smith v. Bates Technical College*, which extended the tort (which had previously covered only at-will employees) to cover contract employees. 991 P.2d 1135 at 1140–41 (Wash. 2000). Although *Smith* illustrates that it is possible for the tort to be extended, the decision in *Smith* lends no support to the notion that liability for the tort should extend to a party not properly considered an employer.[3] Similarly, another case relied on by Plaintiff, *Roberts v. Dudley*, which found that common-law tort liability could be imposed on employers employing less than eight employees, expressly noted that the technical statutory definition of employer to mean one employing eight or more employees did not apply to the common law cause of action. 993 P.2d 901, 911 (Wash. 2000). In so "extending" the tort, the *Roberts* Court did not do away with the prerequisite that the liable party "employ" the plaintiff. Indeed, the *Awana* Court, in rejecting the plaintiffs' attempt to impose liability for the alleged wrongful discharge on the Port of Seattle, specifically noted the importance of a party's control over the employment of the complaining worker. 89 P.3d at 293 (stating "Control over the jobsite does not, however, confer control over the employment of a subcontractor's workers. Appellants do not explain how an owner/contractor is to carry out a duty to refrain from retaliatory discharge of workers employed by subcontractors."). For these reasons, the Court declines to find that a party not properly considered a direct employer can be held liable for the tort of wrongful discharge in violation of public policy.

---

[3] The *Smith* Court discussed at length its rationale: that the tort right implicated in the wrongful discharge cause of action is non-waivable and exists irrespective of the term of employment. 991 P.2d at 1141. For these reasons, the *Smith* Court concluded that employees should be able to assert the claim regardless of whether they are at-will or contract employees.

ORDER - 4

Even if the Court had found that Defendants PNWP and PCA could be exposed to liability under a single employer or an indirect employer theory, Plaintiff has failed to show that there is a genuine issue of material fact that either the PNWP or the PCA are properly considered a single employer (together with Grace Church) or an indirect employer. With respect to Plaintiff's single employer theory, many of Plaintiff's allegations regarding the intertwining of the PNWP and the PCA and Grace Church have to do with the two umbrella organizations' involvement with the pastors of PCA-affiliated particular churches. However, involvement with and even complete control over the pastor(s) of the particular churches does not rise to the level of "interrelation of operations" and "centralized control of labor relations" envisioned by *Kang v. U. Lim America, Inc.* 296 F.3d 810, 815 (9th Cir. 2002) (finding that U. Lim America ("ULA") and its subsidiary U. Lim de Mexico ("ULM") were an integrated enterprise for Title VII purposes because, among other things, ULA kept ULM's accounts, issued its paychecks and paid its bills, ULA's vice president was also ULM's president, and ULA had the authority to hire and fire ULM employees). For these reasons, the Court finds that Defendants PCA and PNWP have shown that there is no evidence that either defendant may be considered a single employer exposed to liability for the alleged wrongful termination in violation of public policy.[4]

---

[4] FED. R. CIV. P. 56(f) provides, in relevant part, that

> [s]hould it appear from the affidavits of a party opposing [a summary judgment motion] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court . . . may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had.

The Ninth Circuit has further clarified how this rule should operate: "To prevail under this Rule, parties opposing a motion for summary judgment must make (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (2004) (citing *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986). In addition, "[t]he burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence exists, and that it would preclude summary judgment." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). Although Plaintiff has requested a continuance under Rule 56(f), Plaintiff fails to describe with any particularity what kind of information she hopes to discover that would preclude summary judgment in favor of the PCA and the PNWP on this issue. Her request is therefore denied.

ORDER - 5

With respect to Plaintiff's indirect employer theory, Plaintiff alleges that two individuals, David Sellers, an associate pastor at Grace, and Paul Warren, a pastor at a PCA church in Baltimore, Maryland, and a close friend of Allen's, took actions relating to her employment on behalf of the PCA and/or the PNWP. Without further elaboration, Plaintiff, in her response, asserts that Sellers and Warren were managing representatives (Resp. 22:6) and/or managing agents of the PCA and/or the PNWP (*id*. 22:16). The alleged "actions" attributed to Sellers and Warren are: (1) their participation in the emergency March 18, 2002 meeting at which it was decided that Allen should take a three-month sabbatical; (2) their action in allowing Allen to speak to Plaintiff alone the next day; (3) their advice to Plaintiff that they thought it would be best if Plaintiff resigned from her position; and (4) Sellers's refusal to allow Plaintiff to continue handling Grace Church's financial matters.

However, there is no evidence that suggests that any of these actions were taken on behalf of the PCA or the PNWP. Plaintiff's bare assertion that Sellers and Warren were agents and/or representatives of the PCA and/or the PNWP is insufficient to withstand the motion for summary judgment. Nothing on the record tends to show that either Sellers or Warren had any employer-employee relationship with the PCA or the PNWP beyond the PCA and the PNWP's ability to revoke or suspend their licenses. In addition, to the extent that Sellers and Warren, as "teaching elders," were part of their regional presbyteries (Sellers's presbytery was the PNWP), this mere fact of membership is not sufficient to establish that the particular actions complained of were taken on behalf of the presbytery (either the regional or the national association).[5] In the absence of any allegations or offers of proof regarding "any of the traditional indicia of an agency relationship (such as consent by the alleged agent that another shall act on his behalf, and control of the alleged agent by the principal)," the Court declines to find that either Sellers or Warren were

---

[5] The Book of Church Order explains that "The Presbytery consists of all the teaching elders and churches within its bounds that have been accepted by the Presbytery. When the Presbytery meets as a court it shall comprise all teaching elders and ruling elders as elected by their Session." BOC 13-1.

ORDER - 6

agents of either the PCA or the PNWP.[6] *Childs v. Local 18, Int'l Bhd. of Elec. Workers*, 719 F.2d 1379, 1382 (9th Cir. 1983) (finding that an entity may be liable for discrimination committed by another if that other is an agent, but concluding that the plaintiff had failed to allege facts supporting a finding that an agency relationship existed).  The Court finds that Defendants PCA and PNWP have established that there is no genuine issue of material fact remaining for trial as to Plaintiff's indirect employer theory.

In accordance with the foregoing, the Court finds that Plaintiff's claims for wrongful termination in violation of public policy against the PCA and the PNWP should be DISMISSED.

  C. *Negligent supervision*

Before proceeding to the merits of Plaintiff's negligent supervision claims against the PCA and the PNWP, the Court must first determine whether it has subject matter jurisdiction over the claim.  At issue is whether the negligent supervision claim falls within the scope of the "ministerial exception," "a constitutionally-derived exception to civil rights legislation that 'insulates a religious organization's employment decisions regarding its ministers from judicial scrutiny.'"  *Elvig v. Ackles*, 98 P.3d 524, 527 (Wash. Ct. App. 2004) ("*State Elvig*") (citing *Bollard v. Cal. Province of the Soc'y of Jesus*, 196 F.3d 940, 944 (9th Cir. 1999)).  Plaintiff's complaint alleges that the PCA and the PNWP "had a duty to supervise Allen in his interactions with Plaintiff," and "knew or should have known that Allen was engaging in conduct that was causing severe emotional distress to Plaintiff."  (Compl. ¶¶ 11.2, 11.3.)  Thus, the allegations, on their face, challenge the PCA and the PNWP's supervision of Allen, a minister.  Because Plaintiff singles out Defendants' *supervision* of Pastor Allen, the Court concludes that the claim falls squarely into the ministerial exception.

---

[6] As with Plaintiff's single employer theory, the Court denies Plaintiff's Fed. R. Civ. P. Rule 56(f) motion with respect to her allegations of an agency relationship.  Plaintiff has not alluded to any evidence she hopes or expects to discover that would bolster her position in such a way as to preclude summary judgment on this point.  Because Plaintiff has failed to sustain her burden on her Rule 56(f) request, it must be denied.

ORDER – 7

In so finding, the Court does not rely on *State Elvig*. The *State Elvig* Court determined that the ministerial exception precluded it from adjudicating Elvig's claim for negligent supervision because *the plaintiff* herself was a minister challenging the church's handling of her complaints against another minister. 98 P.3d at 528 (explaining how the plaintiff's complaint about how she and her complaints against Ackles were treated were entwined with the church's decision-making regarding the plaintiff's employment, and specifically commenting that the court was *not* "determining what, if any, limitations are imposed on a *lay* plaintiff who seeks to sue a church or church authorities"). Instead, the Court relies on the factual distinctions between the present case and *Elvig v. Calvin Presbyterian Church* ("*Federal Elvig*"), in which it was held that the ministerial exception did not prevent a court from adjudicating a plaintiff's claim that a minister had harassed her and that the church had failed to intervene. 375 F.3d 951, 963–64 (9th Cir. 2004) (stating "the only relevant decisions implicated here are Pastor Ackles' supposed decision to harass Elvig and the Church's decision not to intervene to stop or curtail the sexual harassment Elvig reported. These alleged decisions to engage in and permit harassment are insufficient to trigger the ministerial exception").

In contrast to *Federal Elvig*, in which the plaintiff stated a broad challenge to the church's handling of her harassment allegations, in the present case, Plaintiff's negligent supervision claim specifically challenges the PCA and the PNWP's *supervision of Allen* rather than "a decision not to intervene to stop or curtail the sexual harassment". Judicial scrutiny of Defendants' supervision of Allen would require the Court to examine the church court's decisions regarding its pastor. As a result, the Court finds that the First Amendment bars Plaintiff's negligent supervision claim against the PCA and the PNWP. Accordingly, Plaintiff's negligent supervision claim against the PCA and the PNWP must be DISMISSED.

IV. CONCLUSION

Defendants' motion for partial summary judgment is hereby GRANTED. Plaintiff's claims for wrongful termination in violation of public policy and negligent supervision against the PCA and the PNWP are hereby DISMISSED.

SO ORDERED this 14th day of April, 2006.

UNITED STATES DISTRICT JUDGE

ORDER - 9