UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUZANNE MACDONALD,

    Plaintiff,

    v.

GRACE CHURCH SEATTLE, THE PACIFIC NORTHWEST PRESBYTERY OF THE PRESBYTERIAN CHURCH IN AMERICA, and THE PRESBYTERIAN CHURCH IN AMERICA,

    Defendants.

CASE NO. C05-0747C

ORDER

I.    INTRODUCTION

    This matter comes before the Court on the motion by Defendant Grace Church Seattle ("Grace Church") for partial summary judgment on Plaintiff's claims for negligent supervision and wrongful discharge in violation of public policy. (Dkt. No. 28.) Having considered the memoranda, declarations, and exhibits on record, and deeming oral argument unnecessary, the Court finds and orders as follows.

II.    ANALYSIS

    *A.    Applicable Standard of Review*

    The Court will enter summary judgment if "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view all

ORDER – 1

evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* at 248–50; *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). The non-moving party must respond to the motion with more than conclusory allegations, speculations, or argumentative assertions that material facts are in dispute. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

  *B.*  *Negligent Supervision*

  The Court has detailed the factual allegations in this case in a prior summary judgment order. (*See* Dkt. No. 23.) As in that order, the issue is whether Plaintiff's Seventh Cause of Action for negligent supervision (Compl. ¶¶ 11.1–11.5) falls within the scope of the "ministerial exception," which is "a constitutionally-derived exception to civil rights legislation that 'insulates a religious organization's employment decisions regarding its ministers from judicial scrutiny.'" *Elvig v. Ackles*, 98 P.3d 524, 527 (Wash. Ct. App. 2004) (quoting *Bollard v. Cal. Province of the Soc'y of Jesus*, 196 F.3d 940, 944 (9th Cir. 1999)).

  Plaintiff does not oppose summary judgment on this claim, but the Court may not grant the motion "simply because no papers opposing the motion are filed or served, and without regard to whether genuine issues of material fact exist." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). Reviewing the record anew, the Court finds that no genuine issues of material fact preclude summary judgment on that claim. For the reasons stated in its previous order, the Court will GRANT Grace Church's motion IN PART as to Plaintiff's negligent supervision claim.

  *C.*  *Wrongful Discharge in Violation of Public Policy*

  Grace Church also moves for summary judgment on Plaintiff's Sixth Cause of Action for wrongful discharge in violation of public policy (Compl. ¶¶ 10.1–10.4). Plaintiff asserts that "terminating her employment because of her sex [and] because of her opposition to harassment and complaint about harassment" violated a "public policy against sex discrimination." (Compl. ¶ 10.3.) Under Washington law, a wrongful-discharge claim comprises: (1) the existence of a clear mandate of public policy; (2) a showing that sanctioning the employer's conduct would jeopardize that policy; (3) a showing that the

ORDER – 2

employee was discharged because of conduct linked to the public policy; and (4) the absence of an overriding justification for the discharge. *Sedlacek v. Hillis*, 36 P.3d 1014, 1018 (Wash. 2001).

Viewing the evidence in the light most favorable to Plaintiff, Grace Church is not entitled to summary judgment on Plaintiff's wrongful-discharge claim. There is no dispute that Plaintiff was subjected to unwelcome and persistent sexual advances from Pastor Allen, contrary to Washington's strong public policy against such behavior. *See Marquis v. City of Spokane*, 922 P.2d 43, 49 (Wash. 1996) (citing state's statutory prohibition of sexual harassment as "a policy of the highest priority"). After Plaintiff complained to Allen, a member of Grace Church's Session,[1] about his conduct, he informed her that she would have to resign. (MacDonald Decl. Ex. F ¶ 27.) The associate pastor, also a member of the Session, confirmed Allen's decision. (*Id.*) Plaintiff herself later communicated to the ruling elders the severity and frequency of Allen's misconduct. (*Id.* ¶ 31.) Nonetheless, the Session did not question the pastors' decision to terminate Plaintiff.[2] A reasonable jury could conclude from these facts that Plaintiff was terminated because of her complaints, and that permitting her employer to do so would undermine the state's policy against sexual harassment.

Grace Church argues, however, that questioning its justification for Plaintiff's discharge intrudes on its First Amendment free exercise rights. In general, the First Amendment precludes claims that would "require a jury to evaluate religious doctrine or the 'reasonableness' of the religious practices followed [by a religious organization]." *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 957 (9th Cir. 2004). However, this principle "does not provide churches with absolute immunity to engage in tortious conduct. So long as liability is predicated on secular conduct and does not involve the interpretation of church doctrine or religious beliefs, it does not offend constitutional principles." *C.J.C. v. Corp. of*

---

[1] Grace Church's "Session" functions as the church's corporate board of directors for secular purposes and, according to the Presbyterian Book of Church Order ("BCO"), consists of the pastor and associate pastor, known as "teaching elders," together with other "ruling elders." (Sum Decl. Ex. A [BCO] 12-1.)

[2] The BCO designates the pastor as the "moderator of the Session," but gives him no more voting power than the ruling elders. (BCO 12-1.)

ORDER – 3

*Catholic Bishop of Yakima*, 985 P.2d 262, 277 (Wash. 1999); *see also Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 431 (2d Cir. 1999) ("The First Amendment does not prevent courts from deciding secular civil disputes involving religious institutions when and for the reason that they require reference to religious matters.").

Plaintiff's wrongful-discharge claim turns on secular conduct because it, unlike her negligent supervision or sexual harassment claims, concerns a single decision by her employer: the "only relevant decision that [the Court] can reasonably attribute to [Grace Church] on the facts alleged here" is the decision by the pastors, unchallenged by the ruling elders, to terminate Plaintiff after she complained about Allen's harassing conduct. *Bollard*, 196 F.3d at 947. As in *Bollard*, the church in this case does not assert that this particular decision constituted "a method of choosing their clergy." *Id.* And because Plaintiff was employed in an administrative role in which her "primary functions [did not] serve the church's spiritual and pastoral mission," *Gates v. Seattle Archdiocese*, 10 P.3d 435, 438 (Wash. Ct. App. 2000), she is not herself covered by the ministerial exception. (*See* MacDonald Decl. Ex. F ¶¶ 4–5 (describing Plaintiff's job duties).)

Grace Church also contends more broadly that Plaintiff's termination was inextricably intertwined with "the Session's doctrine of church discipline, deference to the minister . . . and protection of the pastoral relation." (Mot. 11.) The record does not support such a conclusion as a matter of law. Although Pastor Allen *was* disciplined and ultimately deposed, the fact finder in this case need make no inquiry into those decisions. That the evidence supporting Plaintiff's claim will reference religious and doctrinal issues does not mean that the wrongfulness of Plaintiff's termination turns on the reasons for Allen's removal from the ministry. *Cf. Elvig*, 375 F.3d at 960 (claims that do not "necessarily involve an inquiry into the Church's decision to terminate [a minister]" need not be dismissed under free exercise principles). Indeed, sexual harassment claims involving religious institutions often require analysis of a minister's interactions, appropriate or otherwise, with members of his congregation. This necessity does not bring such cases within the ministerial exception: "'the constitutional guarantee of religious freedom

ORDER – 4

cannot be construed to protect secular beliefs and behavior, even when they comprise part of an otherwise religious relationship between a minister and a member of his or her congregation. To hold otherwise would impermissibly place a religious leader in a preferred position in our society.'" *C.J.C.*, 985 P.2d at 277 (*quoting Sanders v. Casa View Baptist Church*, 134 F.3d 331, 336 (5th Cir. 1998)).

Finally, Grace Church argues that the Session, in its role as Grace Church's ecclesiastical leadership, was guided in its collective actions towards Plaintiff herself by the ruling elders' religious beliefs and church doctrine set forth in the Presbyterian Book of Church Order ("BCO").[3] It is true that Plaintiff was sometimes equivocal in her explanations of Allen's misconduct, and that the propriety of her own conduct with respect to Allen was a subject of the Session's inquiry. But a credibility dispute between accuser and accused is no different than might face any other secular employer investigating workplace sexual harassment. The Session may well have had questions about Plaintiff's religious or moral transgressions, but the wrongfulness of her termination from a secular administrative position after reporting sexual harassment need not rest on "questions of discipline, or of faith, or ecclesiastical rule, custom, or law [that] have been decided by the highest of these church judicatories." *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 727 (1871).

In sum, the fact that Grace Church has interposed church doctrine in this lawsuit does not of itself transform Plaintiff's wrongful-discharge claim into an ecclesiastical dispute. Nor would it preclude a jury from finding that Grace Church lacked an overriding justification for Plaintiff's discharge. *See Reynolds v. United States*, 98 U.S. 145, 166–67 (1879) ("Can a man excuse his practices to the contrary [of secular laws] because of his religious beliefs? To permit this would make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself."). Because Grace Church has not carried its burden to show that it is entitled to judgment as a

---

[3] The BCO charges the Session with determining "the best measures for promoting the spiritual interests of the church and congregation" (BCO 12-5(e)) and investigating "reports affecting [the] christian character" of any congregation member (*Id.* 12-5(a), 31-2).

ORDER – 5

matter of law, the Court will DENY its motion for summary judgment on Plaintiff's wrongful-discharge claim.

III.    CONCLUSION

For the foregoing reasons, the Court GRANTS the motion by Defendant Grace Church Seattle for summary judgment IN PART, and ORDERS that Plaintiff's claims for negligent supervision be DISMISSED with prejudice. The Court DENIES the motion in all other respects.

SO ORDERED this 4th day of August, 2006.

UNITED STATES DISTRICT JUDGE

ORDER – 6